UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MICHAEL L.,[1] <br><br>                Plaintiff, <br><br>v. <br><br>CAROLYN W. COLVIN, Acting Commissioner of the Social Security Administration,[2] <br><br>                Defendant. | Case No.: 3:23-cv-01967-CAB-VET <br><br>**REPORT AND RECOMMENDATION ON MOTION FOR SUMMARY JUDGMENT** <br><br>**[Doc. No. 12]** |

This Report and Recommendation is submitted to United States District Judge Cathy Ann Bencivengo pursuant to 28 U.S.C. § 636(b)(1) and Civil Local Rule 72.1.c.

## I.   INTRODUCTION

On October 25, 2023, Plaintiff Michael L. filed a complaint challenging Defendant Commissioner's ("Commissioner" or "Agency") denial of his application for disability insurance benefits. Doc. No. 1. Before the Court is Plaintiff's Motion for Summary Judgment pursuant to 42 U.S.C. §405(g). *See* Doc. No. 12. Having considered the parties'

---

[1]   Partially redacted in compliance with Civil Local Rule 7.1(e)(6)(b).
[2]   Carolyn W. Colvin is substituted for Kilolo Kijakazi pursuant to Fed. R. Civ. P. 25(d).

1

arguments, applicable law, and the record before it, and for the reasons discussed below, the undersigned **RECOMMENDS AFFIRMING** the Commissioner's decision.

## II. BACKGROUND

### A. Procedural History

Pursuant to the Social Security Act ("Act"), Plaintiff applied for disability insurance benefits on April 26, 2021, alleging disability commencing on March 15, 2020. AR 21.[3] The Agency denied the application initially and on reconsideration. AR 153–169, 170–189. Plaintiff timely requested a hearing before an Administrative Law Judge ("ALJ"), and on December 2, 2022, the ALJ held a hearing. AR 90–134. On January 20, 2023, the ALJ found that Plaintiff was not disabled. AR 21–33. Plaintiff timely appealed, and the Appeals Council affirmed the ALJ's decision on September 8, 2023. AR 1. On October 25, 2023, Plaintiff initiated this action seeking judicial review of the ALJ's January 2023 decision. Doc. No. 1.

### B. Summary of The ALJ's January 2023 Decision

As an initial matter, the ALJ found that there was new and material evidence showing an increase in the severity of Plaintiff's impairments. AR 22. Therefore, despite a prior finding of non-disability, the ALJ did not apply any presumption of non-disability. AR 22. Additionally, the ALJ considered late submitted evidence as part of the record. AR 21.

In making the disability determination, the ALJ followed the Agency's five-step sequential evaluation process to determine whether Plaintiff was disabled. *See* 20 C.F.R. § 404.1520(a). At step one, the ALJ determined that Plaintiff had "not engaged in

---

[3] "AR" refers to the Administrative Record lodged on December 22, 2023. Doc. No. 9. The Court's citations to the AR use the page references on the original document rather than the page numbers designated by the Court's case management/electronic case filing system ("CM/ECF"). For all other documents, the Court's citations are to the page numbers affixed by the CM/ECF.

substantial gainful activity since March 15, 2020," the alleged onset date. AR 24. At step two, the ALJ found that Plaintiff had the following severe impairments: obesity, right shoulder degenerative joint disease, right carpal tunnel syndrome, and right ulnar nerve anomaly, and the following non-severe impairments: bilaterial vitreous detachment, pre-diabetes, brain inflammation, hypertension, hip, knee, and feet impairments, spinal conditions, asthma, hip pain, and left-hand problems. AR 25–26. At step three, the ALJ concluded that Plaintiff did not have an impairment or combination of impairments that met or was medically equivalent to those in the Commissioner's Listing of Impairments. AR 26. Before proceeding to step four, the ALJ further determined that Plaintiff's impairment left him with the residual functional capacity ("RFC") to perform sedentary work with certain limitations. AR 27. Those limitations consisted of the following: frequently handle and finger; occasionally reach with both upper extremities; and never reach overhead with the upper right dominant extremity. AR 27.

At step four, relying on the testimony of a vocational expert ("VE") and Plaintiff, the ALJ concluded that Plaintiff could perform his past relevant work as a Companion as actually performed. AR 29. The ALJ relied on Plaintiff's extensive testimony concerning his duties and responsibilities, including that Plaintiff's "main duty" was to "sit in a chair and watch elderly people." AR 29–32. The VE testified that the role of a Companion is generally classified as light, semi-skilled work, but that, based on Plaintiff's testimony, Plaintiff's past relevant work was actually performed as sedentary, unskilled work. AR 29. The VE further testified that given the limitations set forth in the RFC assessment, a hypothetical individual with the Plaintiff's same age, work history, and education would still have the ability to perform his past relevant work as a Companion. AR 32.

The ALJ did not continue to step five after finding that Plaintiff was able to perform past relevant work and therefore was not disabled under 20 CFR 404.1520(f).

## III.     STANDARD OF REVIEW

A court may set aside the Commissioner's denial of benefits "only if the ALJ's decision was not supported by substantial evidence in the record as a whole or if the ALJ

applied the wrong legal standard." *Coleman v. Saul*, 979 F.3d 751, 755 (9th Cir. 2020); *see* 42 U.S.C. § 405(g). Substantial evidence is "more than a mere scintilla," and "means only . . . such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 587 U.S. 97, 103 (2019) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)); *see also Lingenfelter v. Astrue*, 504 F.3d 1028, 1035 (9th Cir. 2007) (substantial evidence is "more than a mere scintilla, but less than a preponderance"). A court "must review the administrative record as a whole, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion." *Reddick v. Chater*, 157 F.3d 715, 720 (9th Cir. 1998).

The Court may not impose its own reasoning to affirm the ALJ's decision. *Garrison v. Colvin*, 759 F.3d 995, 1010 (9th Cir. 2014). "If the evidence is susceptible to more than one rational interpretation, it is the ALJ's conclusion that must be upheld." *Ford v. Saul*, 950 F.3d 1141, 1154 (9th Cir. 2020) (internal quotations omitted). Thus, "review of an ALJ's fact-finding for substantial evidence is deferential, and the threshold for such evidentiary sufficiency is not high." *Id.* at 1159 (internal quotations omitted) (quoting *Biestek*, 587 U.S. at 103); *Kitchen v. Kijakazi*, 82 F.4th 732, 738 (9th Cir. 2023) ("Overall, the standard of review is highly deferential.").

Lastly, the Court will not reverse for harmless error. *Marsh v. Colvin*, 792 F.3d 1170, 1173 (9th Cir. 2015). "An error is harmless only if it is inconsequential to the ultimate nondisability determination." *Lambert v. Saul*, 980 F.3d 1266, 1278 (9th Cir. 2020) (internal quotations omitted).

**IV.   DISCUSSION**

Plaintiff presents the following issues for the Court's review, arguing that the ALJ erred as to each:

1. Whether the ALJ provided "specific, clear and convincing reasons" for finding Plaintiff's subjective symptom testimony not credible;
2. Whether the ALJ provided "specific, clear and convincing reasons" for rejecting at Step Two Plaintiff's subjective symptom testimony regarding leg and spinal issues; and

3. Whether Plaintiff performed past relevant work as a Companion with special accommodations.

*See generally* Doc. No. 12-1. The Court addresses each in turn.

### A. The ALJ's Analysis of Plaintiff's Subjective Symptom Testimony

Determining whether a claimant's subjective symptom testimony is credible involves a two-step analysis. "First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged." *Ferguson v. O'Malley*, 95 F.4th 1194, 1199 (9th Cir. 2024) (quoting *Garrison*, 759 F.3d at 1014). As part of this analysis, "the claimant is not required to show that her impairment could reasonably be expected to cause the severity of the symptom she has alleged; she need only show that it could reasonably have caused some degree of the symptom." *Garrison*, 759 F.3d at 1014 (citation and internal quotations omitted). "Nor must a claimant produce objective medical evidence of the [symptom] itself, or the severity thereof." *Id*. (citation and internal quotations omitted).

"If the claimant satisfies the first step of this analysis, and there is no evidence of malingering, the ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so." *Id*. at 1014–15 (citation omitted). "The clear and convincing standard is the most demanding required in Social Security cases." *Id*. (citation omitted). "The standard isn't whether our court is convinced, but instead whether the ALJ's rationale is clear enough that it has the power to convince." *Smartt v. Kijakazi*, 53 F.4th 489, 499 (9th Cir. 2022). "Contradiction with the medical record is a sufficient basis for rejecting the claimant's subjective testimony." *Id*. (citation omitted). "Ultimately, the 'clear and convincing' standard requires an ALJ to show his work . . . ." *Id*. "If the ALJ fails to provide specific, clear, and convincing reasons for discounting the claimant's subjective symptom testimony, then the ALJ's determination is not supported by substantial evidence." *Ferguson*, 95 F.4th at 1199 (citation omitted).

Here, there was no evidence or finding of malingering. *See generally* AR 24–32. Accordingly, the ALJ was required to articulate specific, clear, and convincing reasons for rejecting Plaintiff's testimony about the severity of his symptoms. Plaintiff argues that the ALJ failed to meet the clear and convincing standard in rejecting Plaintiff's testimony. Doc. No. 12-1 at 7. Specifically, Plaintiff contends that the ALJ offers no more than a summary of Plaintiff's testimony, a recitation of medical facts, and a conclusory boilerplate statement with "zero reasoning." *Id.* at 6. The Court disagrees. The ALJ discusses specific testimony accompanied by an analysis of medical evidence relevant to that testimony and thus does more than offer a boilerplate conclusion and medical history summary.

First, because Plaintiff alleges disability based on problems with his right upper extremity, especially his shoulder, the ALJ outlines Plaintiff's testimony concerning this impairment. AR 27. Specifically, as noted by the ALJ, Plaintiff testified that "he has difficulty lifting things and does not use his right arm to carrying [sic] things," he "could not lift his right arm above his head," and "he does not use his right arm or hand at all because of sharp pain throughout." *Id.* The ALJ finds that Plaintiff's statements concerning the "intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence or other evidence in the record." AR 28.

Next, the ALJ proceeds to analyze the relevant medical record. He discusses imaging of Plaintiff's right shoulder and associated physical therapy, and the repeated recommendations that Plaintiff undergo surgery for the right shoulder, a recommendation Plaintiff repeatedly declined. AR 28 (citing AR 678, 681, 683, 784, 787, 893, 993). The ALJ notes significant improvement with a shoulder injection and that Plaintiff was offered physical therapy in January 2022, but also declined this care. AR 28 (citing AR 1006).

Critically, the ALJ also discusses a September 2021 consultative exam during which Plaintiff exhibited limited range of motion and decreased strength in his right arm but "exhibited no pain behaviors." AR 28. During another orthopedic evaluation of Plaintiff's shoulder in 2021, the ALJ notes that Plaintiff showed continued difficulty but "also showed full motor strength." *Id.* (citing AR 925, 912–915). As part of his analysis, the ALJ also

highlights Plaintiff's testimony that "he has few limitations related to his right hand." AR 28.

The ALJ ultimately concludes that Plaintiff had significant degenerative change in his shoulder and functional limitations, but he also finds, based on the records analyzed, that Plaintiff *repeatedly* declined medical care. AR 28. The ALJ observes that Plaintiff was a candidate for surgery, but he never "proceeded with scheduling" the surgery. *Id.* The ALJ further notes that injections improved Plaintiff's symptoms, but Plaintiff "stopped accepting them." *Id.* Lastly, the ALJ observes that Plaintiff had minimal treatment for his carpal tunnel and ulnar abnormality and Plaintiff's motor function in his upper extremities was "generally unremarkable." *Id.*

The ALJ's observations and findings regarding Plaintiff's failure to obtain prescribed or recommended care are significant. The Ninth Circuit has "long held that, in assessing a claimant's credibility, the ALJ may properly rely on unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment." *Molina v. Astrue*, 674 F.3d 1104, 1112 (9th Cir. 2012), *superseded on other grounds by* 20 C.F.R. § 404.1502(a)); *see also Chaudhry v. Astrue*, 688 F.3d 661, 672 (9th Cir. 2012) ("[I]f a claimant complains about disabling pain but fails to seek treatment, or fails to follow prescribed treatment, for the pain, an ALJ may use such failure as a basis for finding the complaint unjustified or exaggerated. . . ."). The ALJ's observations regarding minimal treatment are similarly important in terms of assessing Plaintiff's testimony. *See Parra v. Astrue*, 481 F.3d 742, 751 (9th Cir. 2007) ("evidence of 'conservative treatment' is sufficient to discount a claimant's testimony regarding severity of an impairment"). Further, the ALJ noted specific inconsistencies, including an orthopedic evaluation that showed full motor strength and Plaintiff's own testimony that he had few limitations related to his right hand. AR 28. Such inconsistencies are an appropriate basis for discounting Plaintiff's testimony. *See, e.g., Richards v. Comm'r of SSA*, No. CV-23-01115-PHX-SPL, 2024 U.S. Dist. LEXIS 81213, at *7 (D. Ariz. May 2, 2024) (affirming the ALJ's denial of benefits where the ALJ specifically found that certain

evidence was inconsistent with Plaintiff's own statements, as well as the medical records); *see also Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995) ("The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and for resolving ambiguities.").

Nevertheless, Plaintiff highlights *Lambert v. Saul* in support of his contentions that the ALJ erred. Except unlike in *Lambert*, the ALJ's conclusion here is not a boilerplate conclusion unsupported by any analysis. *See Lambert*, 980 F.3d at 1277 (holding that the ALJ erred by "offering non-specific conclusions that [claimant's] testimony was inconsistent with her medical treatment" without identifying specific testimony and evidence that contradicted that testimony). Moreover, *Lambert* confirms that Ninth Circuit cases do not require the ALJ to "perform a line-by-line exegesis of the claimant's testimony, nor do they require ALJs to draft dissertations when denying benefits." *Id.* at 1277–1278. In fact, "the ALJ's analysis need not be extensive." *Treichler v. Comm'r of SSA*, 775 F.3d 1090, 1103 (9th Cir. 2014).

In sum, the ALJ identifies the testimony at issue, analyzes the record relevant to that testimony, and ties that together to find that Plaintiff repeatedly declined medical care for his shoulder, had minimal treatment for other ailments, his motor function in upper extremities was generally unremarkable, and he had few limitations in the right hand (based on Plaintiff's own testimony). The Court finds that this analysis satisfies the ALJ's obligation to provide clear and convincing reasons for concluding that Plaintiff's statements concerning the intensity, persistence, and limited effect of his symptoms were not entirely consistent with the medical evidence and other evidence in the record.

**B.    The ALJ's Analysis at Step Two of Plaintiff's Testimony Regarding His Leg and Spinal Issues**

Plaintiff's second issue is similar to the first, namely whether the ALJ provided clear and convincing reasons for discounting Plaintiff's symptom testimony relating to leg and spinal issues, which led to a finding that these ailments were not severe. Plaintiff argues that the ALJ "evade[d]" the "clear and convincing reasons standard" by "hiding testimony

out of order in the ALJ Opinion." Doc. No. 12-1 at 8. Again, the Court disagrees because the ALJ expressly identified the testimony at issue and explained the inconsistencies that supported rejecting Plaintiff's testimony regarding leg and spine issues.

Regarding Plaintiff's leg issues, the ALJ notes that Plaintiff fractured his right fibula in 2020, but further notes that Plaintiff was "full weight-bearing without assistive devices" by April 2020. AR 25. The ALJ also explains that although Plaintiff testified that he walks with a limp, "the record does not document any need for an assistive device to ambulate." *Id.* Additionally, the ALJ makes the following observations: (i) Plaintiff was referred to an orthopedist for his knee, but he did not make an appointment (citing AR 1055); Plaintiff's ankle pain improved with conservative treatment (citing AR 668); (iii) Plaintiff did not require injections or surgery (citing AR 668); and (iv) during his consultative examination, Plaintiff was able to walk on his heels and toes and had negative straight leg testing. AR 25 (citing AR 901). Based on the record, the ALJ concludes that Plaintiff's leg-related impairments were non-severe.

Regarding Plaintiff's spinal issues, the ALJ explains that Plaintiff testified that "he could not turn his neck to look to the left or behind himself, but this significant limitation is not noted in the record." AR 25–26. The ALJ further observes that during his consultative examination, Plaintiff had a normal gait, could walk on his heels and toes, had negative straight leg testing, exhibited no pain behaviors, had no tenderness in his spine, and had full range of motion in his back. AR 26 (citing AR 901). Additionally, the ALJ notes that Plaintiff required neither injections nor other invasive treatments for his spine. AR 26. Based on the record, the ALJ finds that Plaintiff's spinal conditions were non-severe. *Id.*

In short, the ALJ notes the relevant testimony regarding Plaintiff's foot, knee, leg and spinal issues and discusses specific portions of the record, including medical record, that contradict or fail to support Plaintiff's testimony, including a lack of required treatment. AR 25–26. The Court finds that this analysis satisfies the ALJ's obligation to provide clear and convincing reasons for rejecting Plaintiff's testimony concerning his leg and spinal issues.

### C. The ALJ's Conclusion that Plaintiff Can Perform Past Relevant Work

The ALJ found that Plaintiff was not disabled because he was able to perform his past relevant work as a Companion as actually performed. AR 29. Plaintiff argues that this conclusion is in error because Plaintiff performed this job with "major accommodations" and not as a single job or for a significant time period. Doc. 12-1 at 9–11. The Court disagrees.

At step four, Plaintiff bears the burden of establishing that his impairments prevent him from doing past relevant work either as actually performed or as generally performed in the national economy. *Pinto v. Massanari*, 249 F.3d 840, 844–845 (9th Cir. 2001); *Lewis v. Barnhart*, 281 F.3d 1081, 1083 (9th Cir. 2002). Past relevant work is defined as work Plaintiff actually performed within the past fifteen years at substantial gainful levels and that lasted long enough for Plaintiff to learn how do it. 20 C.F.R. §§ 404.1560(b), 416.960(b), 416.965. Work done under special conditions, "such as work done in a sheltered workshop or as a patient in a hospital," may preclude past work from qualifying as substantial gainful activity. 20 C.F.R. §§ 404.1573(c), 416.973(c). However, relatively minor accommodations by an employer do not establish special conditions. *Page v. Berryhill*, No. 6:17-CV-00444-MO, 2018 U.S. Dist. LEXIS 65012, at *6 (D. Or. Apr. 18, 2018); *Katz v. Sec'y of Health & Human Serv.*, 972 F.2d 290, 294 (9th Cir. 1992).

Here, the Court finds that substantial evidence supports the ALJ's conclusion that Plaintiff could perform past relevant work as a Companion. The ALJ heard extensive testimony about Plaintiff's job tasks and performance as a Companion directly from Plaintiff. *See* AR 29; *see also* AR 106–110. Plaintiff confirmed the sedentary nature of his job as a Companion, including sitting over 6–7 hours per eight-hour shift, and the minimal duties he had, including occasionally microwaving a meal, but "a lot of times" Plaintiff "would do nothing for the entire shift." AR 30–31. The ALJ directly quoted Plaintiff's relevant testimony in his opinion to show how Plaintiff performed his job as a Companion. AR 30–31. Plaintiff's testimony also confirmed that he applied for the job on the open market and did not apply through a special program providing special subsidies or

accommodations. AR 31; AR 112. Additionally, the ALJ relied on the testimony of a VE, who testified that given the Plaintiff's RFC, an individual with Plaintiff's age, work history, and education would still be able to perform his past relevant work as a Companion. AR 32; AR 129–130. The ALJ properly relied on Plaintiff and the VE's testimony to support his conclusion that Plaintiff could perform past relevant work as actually performed. *See Lewis*, 281 F.3d at 1084 ("[T]he ALJ must assess the claimant's testimony and may use that testimony to define past relevant work as actually performed."); *Buck v. Berryhill*, 869 F.3d 1040, 1051 (9th Cir. 2017) ("An ALJ may take administrative notice of any reliable job information, including information provided by a VE. A VE's recognized expertise provides the necessary foundation for his or her testimony. Thus, no additional foundation is required.") (internal citations omitted).

     Moreover, there is no evidence in the record of any accommodation. Plaintiff did not testify to any specific accommodations. Following the hearing, Plaintiff submitted an email exchange with Mike Miller, who previously employed Plaintiff as a Companion. AR 31. Mr. Miller indicated that patient care provided by his company included assisting clients with all activities of daily living, including bathing, clothing, toileting, and assisting with meals. AR 532. Importantly, however, Mr. Miller could not give detailed information about Plaintiff's specific cases or clients. *Id*. Simply put, Mr. Miller did not indicate that Plaintiff performed his past work as a Companion with any special accommodations or even that he provided Plaintiff with more leniency in his employment duties. Further, the VE testified that he saw no evidence in the record he reviewed to indicate that Plaintiff performed his job as a Companion pursuant to any subsidy or special dispensation for fewer duties. AR 32; *see also* AR 114.

     Lastly, to the extent Plaintiff complains that the "record is not well developed" or suggests that the ALJ did not ask the right questions, the Court notes that it is Plaintiff's burden to demonstrate he could not perform past relevant work. Moreover, the ALJ gave Plaintiff the opportunity to supplement the record. Specifically, at the end of the December 2, 2022 hearing, the ALJ gave Plaintiff 15 days to provide evidence and/or argument that

Plaintiff's past relevant work as a Companion was done with a special accommodation. AR 117–119. Plaintiff submitted the email exchange with Mr. Miller, an unsworn communication that did not speak to any special accommodations.

In sum, the Court finds that substantial evidence supports the ALJ's conclusion that Plaintiff could perform his past relevant work as a Companion. *See Tamara B. v. Comm'r of SSA*, No. 6:21-cv-00070-JR, 2022 U.S. Dist. LEXIS 32027, at *9–10 (D. Or. Feb. 23, 2022) ("Given the VE's statements and the lack of evidence to the contrary, the Court finds that plaintiff's past relevant work was not conducted under special conditions.").

### D. Chevron Deference

For the first time in his Reply, Plaintiff raises the question of whether the ALJ may stop his analysis at step four, without proceeding to step five to analyze whether Plaintiff can do work that exists in large numbers in the national economy. Doc. No. 16 at 9. According to Plaintiff, the issue implicates *Chevron* deference because the ALJ's ability to stop the analysis at step four rests on *Barnhart v. Thomas*, 540 U.S. 20 (2003), a Supreme Court decision that relied on the *Chevron* doctrine in holding that the Agency need not reach step five. *Id.*; *see also Barnhart v. Thomas*, 540 U.S. 20, 24–26 (2003) (holding that the Agency's determination that it can find a claimant not disabled where she remains physically and mentally able to do her previous work, without investigating whether that work exists in significant numbers in the national economy, is a reasonable interpretation of 42 U.S.C. § 423(d)(2)(A) that is entitled to deference under *Chevron*). Because the legal validity of *Chevron* deference was in dispute before the Supreme Court at the time of briefing, Plaintiff suggested that this Court delay deciding this case. *See* Doc. No. 16 at 10.

Setting aside the fact that Plaintiff improperly raises a new argument in reply, *see e.g.*, *Coleman v. Quaker Oats Co.*, 232 F.3d 1271, 1300 (9th Cir. 2000) ("[I]ssues cannot be raised for the first time in a reply brief."), the validity of the *Chevron* doctrine does not impact *Barnhart* or this case. In overruling *Chevron U.S.A., Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837 (1984), the Supreme Court did not overrule prior decisions that relied on the *Chevron* framework. *See Loper Bright Enters. v. Raimondo*,

603 U.S. 369, 376 (2024) ("By [overruling *Chevron*], however, we do not call into question prior cases that relied on the *Chevron* framework. The holdings of those cases that specific agency actions are lawful . . . are still subject to statutory *stare decisis* despite our change in interpretive methodology. Mere reliance on *Chevron* cannot constitute a 'special justification' for overruling such a holding . . . ."). Accordingly, the Court need not consider the issue of whether the ALJ properly stopped his analysis at step four.

## V.   CONCLUSION

Based on the foregoing, the undersigned **RECOMMENDS** that the Commissioner's final decision be **AFFIRMED** and judgment be entered in the Commissioner's favor.

**IT IS HEREBY ORDERED** that any written objection to this Report and Recommendation must be filed and served on all parties no later than **February 11, 2025**. The pleading should be captioned "Objections to Report and Recommendation."

**IT IS FURTHER ORDERED** that any reply to the objections shall be filed with the Court and served on all parties no later than **February 25, 2025**. The parties are advised that failure to file objections within the specified time may waive the right to raise those objections on appeal. *See Martinez v. Ylst*, 951 F.2d 1153, 1156 (9th Cir. 1991).

**IT IS SO ORDERED.**

Dated: January 28, 2025

_____
Hon. Valerie E. Torres
United States Magistrate Judge